Seymour Schwartz, J.
Both parties move for summary judgment in this action where plaintiff, sublessee of 78-86 Broad Street, New York City, seeks to recover under its "Standard Multi-Peril Building Form Endorsement” of its fire insurance policy (all-risk) for loss sustained as a result of the buckling of the marble facing on its building constructed in 1931. On August 1, 1972, the City of New York placed a violation on the building and directed repair. The policy provides: "This policy insures against all risks of direct physical loss to coverage A-Buildings(S), subject to the provisions and stipulations herein and in the policy of which this form is made a part.”
Defendant claims the policy does not cover this damage in these circumstances, citing the following exclusion: "This policy does not insure under this form against * * * D. Loss caused by 1. Wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defect; smog * * * settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings * * * unless loss by a peril not otherwise excluded ensues and then the company shall be liable only for such ensuing loss.”
*707 Plaintiffs engineer attributed the buckling to failure to provide for masonry covering of the steel beams called for by the New York City Building Code, the bending of galvanized metal anchors in the field before installation causing the galvanizing to break and steel straps to rust and failure to connect steel beams to steel plates placing them instead into the masonry backup opening joints and permitting moisture to penetrate.
The parties are in essential agreement that rain, frost, seepage, rust and corrosion combined with the original improper construction to ultimately cause the buckling.
While sometimes referred to as an "all-risk policy” this is actually a misnomer since, as here, there are specific exclusions. The purpose of such a policy is to protect against a fortuitous event. This has been defined as "an event happening by chance or accident.” (Kermani v Insurance Co. of North Amer., 142 Misc 542, 543.) Or an event "occurring by chance without evident causal need or relation or without deliberate intention.” (Avis v Hartford Fire Ins. Co., 283 NC 142, 148.) Such a policy does not obligate the insurer to pay for loss or damage resulting wholly from the nature and inherent qualities of the property insured. (Avis v Hartford, supra.)
Here the moisture which was a cause of the damage acted over a period of 40 years and it was approximately 39 years after construction that the policy sued on was issued. In Greene v Cheetham (293 F2d 933, 936-937) the court stated: "But the 'all-risk’ event so covered would not include an undisclosed event that existed prior to coverage, or an event caused by the consummation during the period of coverage of an in-dwelling fault in the goods that had existed prior to coverage. Otherwise, the underwriters are in the position of either having to pay for undisclosed loss or damage actually caused prior to the time of coverage or uncontemplated loss or damage caused from deteriorating agents present within the goods”.
The policy specifically excludes "wear and tear, deterioration, rust or corrosion, mould, wet or dry rot; inherent or latent defects.” Moisture seepage comes within this exclusion and improper construction 40 years before comes within the "inherent or latent defect” portion.
Plaintiff insists, however, that an exception from the exclusion clause governs "unless loss by a peril not otherwise excluded ensues and then the company shall be liable for only *708 such ensuing loss.” It claims that water seepage and accumulation of moisture behind the marble slabs, freezing of water and negligent construction were causative features not otherwise excluded. This argument is not persuasive. The alleged nonexcluded clauses grow out of and are directly related to the excluded ones. They do not take on the character of a subsequent fortuitous event.
Perhaps the closest case in point is Aetna Cas. & Sur. Co. v Yates (344 F2d 939). There plaintiffs discovered that the joists, sills and subflooring of their home were almost completely rotted away. The cause was that the crawl space under the house was inadequately supplied with vents. Contact between air trapped in the crawl space and the subfloors and sills, which had been chilled by air conditioning, produced condensation of moisture and consequent rotting. The policy was an all-risk policy which excluded (p 940): "i. Loss by inherent vice, wear and tear, deterioration; rust, rot, mould”. An exception to the exclusion was (p 941): "loss caused by collapse of building, water damage * * * provided such losses would otherwise be covered under this policy.”
Judge Friendly in granting judgment for the insurer held (p 941):
"Plaintiffs put more weight on the last quoted clause than it will bear. The result of their construction would be that a clause intended to narrow the exclusions for 'rust, rot, mould or other fungi’ and 'dampness of atmosphere’ would very nearly destroy them. A court may not properly give the clause such an unnatural effect unless the words compel. They are far from doing that. A likely case for application of the clause would be if water used in extinguishing a fire or coming from a burst pipe flooded the house and in turn caused rust or rot; loss from rust or rot so caused would be a loss ensuing on water damage. That is not this case, where the rot may have ensued from the presence of water but not from water damage.
"In short, plaintiffs cannot bring themselves within either of these readings, both of which require that rot and water damage be in some sense separable events. We do not think that a single phenomenon that is clearly an excluded risk under the policy was meant to become compensable because in a philosophical sense it can also be classified as water damage; it would not be easy to find a case of rot or dampness of atmosphere not equally subject to that label and the exclu *709 sions would become practically meaningless. In our case the rot may have ensued from water but not from water damage, and the damage ensuing from the rot was not the damage from the direct intrusion of water conveyed by the phrase 'water damage.’ ”
In a recent New York case, Budd Looms v American Cas. Co. of Reading, Pa. (37 NY2d 738), suit was brought under an all-risk policy where damage ensued because rainwater entered an opening in a basement wall made by workmen installing a sprinkler system. Excluded from coverage was (p 739): "influx of water derived from natural sources through basement walls * * * unless caused by or resulting from a peril not otherwise excluded”. The court held that rain was a natural source and denied coverage.
In the present case the damages sustained by plaintiff come within the exclusion provisions of the policy.
Judgment for defendant dismissing plaintiffs complaint.